UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:02-cv-1437-Orl-22DAB

ROBERT P. HATMAKER,

    Plaintiff,

vs.                            **DISPOSITIVE MOTION**

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.
_____/

## LIBERTY MUTUAL'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56, hereby moves this Court to enter summary judgment in favor of Liberty Mutual and against Plaintiff. The undisputed facts establish that, as a matter of law, Plaintiff is not entitled to coverage or a duty to defend under a Liberty Mutual homeowner's insurance policy because the damages at issue are excluded from coverage under the policy's intentional act exclusion.

### INTRODUCTION

This case arises out of a physical altercation between Plaintiff and John Harley Cox, who was insured under a Liberty Mutual homeowner's policy. During the altercation, Cox grabbed Plaintiff and intentionally threw him to the ground and kept him restrained while on

{M2033391;1}

1

the ground, allegedly causing injuries to Plaintiff. Plaintiff then sued Cox in state civil court (the "underlying litigation"). The parties reached a settlement agreement in the underlying litigation in which Cox agreed to entry of judgment against him and an assignment of his rights under the Liberty Mutual policy to Plaintiff. In exchange, Plaintiff agreed not to execute against Cox. Plaintiff then commenced the instant litigation, seeking coverage under the Liberty Mutual policy for the judgment that was entered in the civil case, as well as a determination that Liberty Mutual was obligated to defend its insured in the underlying litigation.

Plaintiff, however, is not entitled to any benefits under the Liberty Mutual policy. The policy contains an exclusion for injuries that are intended or expected by the insured. Because Plaintiff's alleged injuries fall within the scope of this exclusion, there is no coverage under the policy. In addition, based upon the allegations of the complaint in the underlying litigation, Liberty Mutual did not owe a duty to defend Cox. Accordingly, Liberty Mutual is entitled to summary judgment.

## STATEMENT OF FACTS UPON WHICH THERE IS NO DISPUTE

### A. The Liberty Mutual Policy

At all relevant times, John Harley Cox was insured under a Liberty Mutual homeowner's insurance policy. See Policy, attached hereto as Exhibit A. The Policy provides covered benefits as follows:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

{M2033391;1}

2

> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

See Policy at Section II – Liability Coverages, Coverage E.

This coverage, however, is subject to all of the Policy's terms and conditions, including exclusions to coverage. One of these exclusions provides as follows:

> **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage": a. which is expected or intended by the "insured" . . .

See Policy at Section II – Exclusions, Paragraph (1)(a) (emphasis in original). This exclusion, therefore, commonly referred to as an "intentional act exclusion," excludes coverage for injury which is expected or intended by the insured.

### B. The Altercation Between Plaintiff and Cox

On or about October 12, 1998, Cox was involved in a physical altercation with Plaintiff. At the time of the altercation, Plaintiff was taking pictures of certain disputed property in Christmas, Florida when Cox and Gary Smith, Cox's brother-in-law, approached Plaintiff on three-wheelers. See Deposition of Plaintiff, Robert Hatmaker, at 29 (attached hereto as Exhibit B). Cox appeared "mad," id. at 30, and was "kind of hollering" at Plaintiff about the ownership rights of disputed property. Id. at 33. Cox dismounted his three wheeler and crawled under the barbed wire fence that separated Cox from Plaintiff. Id.

{M2033391;1}

3

Plaintiff, who was "really scared," started running along the fence to avoid Cox, and turned to take a photograph of Cox. Id. at 30, 34, 37, 39. Plaintiff testified that he recalls nothing further about the altercation until he saw Cox on top of him, restraining him in a ditch.[1] Id. at 30, 40, 48, 52.

Although Plaintiff testified in this action that he does not recall the altercation specifically beyond what is set forth above, Cox testified with greater detail. Cox testified that, when he approached Plaintiff from his three-wheeler, Cox asked him questions relating to a parcel of property that was in dispute. See Deposition of John Harley Cox at 13 (attached hereto as Exhibit C). They started to argue over the disputed property, when Plaintiff started taking pictures of Cox. Id. at 13-14. Cox then "mashed the wire down and crawled through the barbed wire fence." Id. at 16. Cox believed that Plaintiff was walking away from him. Id. at 18. Cox again asked him to stop taking pictures of him. Id. at 19. Cox then caught up to Plaintiff and "I grabbed him, I threw him on the ground and took the camera away from him." Id. Although Cox did not want to hurt Plaintiff, id. at 21, he intended to push Plaintiff to the ground:

---

[1] As explained in much greater detail in Liberty Mutual's Motion to Dismiss for Fraud Upon the Court (docket entry 39), such testimony contradicts sworn testimony Plaintiff has previously given, including a sworn statement to police, the deposition in the criminal case that was brought against Cox, his deposition in the underlying litigation, and his answers to interrogatories in the underlying litigation, all of which were explicit that Cox grabbed Plaintiff, struck Plaintiff and "absolutely beat the hell out of" Plaintiff. See Motion to Dismiss generally. Such testimony, if true, would clearly trigger the application of the intentional act exclusion. Even though a factfinder could determine that Plaintiff's prior sworn statements reflect the true version of the altercation, for purposes of this motion for summary judgment, Plaintiff's testimony must be viewed in the light most favorable to him, which is that he has no memory of the incident beyond what was set forth in the text above. Even when his testimony is viewed in this favorable light, however, his claim is not covered under the Policy.

Q: Okay. And when you say you threw him on the ground, tell me – I mean, how did you do it, did you push and fall or how?

A: I grabbed him, pushed him down on the ground.

\* \* \* \* \* \* \* \* \* \*

Q: All right. Now, when you – would you – when you pushed him, okay, you said threw him to the ground, did you have the intent to throw him to the ground, is that what you're trying to do?

A: I put him on the ground to get the camera away from him.

Q: You wanted him to be on the ground, correct?

A: I guess it was a split decision.

Q: Okay. But that's what you're trying to accomplish?

A: I guess so, yeah.

Q: Okay. And you know that if you put somebody on the ground they might hurt themselves, that's a possibility, correct?

MR. PETERS: Object to form.

A: If you slam them.

Q: Okay. I mean, if you hit – if you push them hard enough they might hurt themselves, correct?

MR. PETERS: Object to form.

A: Could've.

Q: All right. If you kind of push him to the ground and they slip and they hit something, they could hurt themselves, correct?

A: Yes.

MR. PETERS: Object to form.

Id. at 20-22. Cox acknowledges that he intended that Plaintiff hit the ground and be restrained:

> Q: Let me just go back to one thing, Mr. Cox. When you said you intended to throw Mr. Hatmaker on the ground, to put it a different way, it wasn't an accident that Mr. Hatmaker fell on the ground, was it?
>
> A: No, I put him on the ground.
>
> Q: Okay. That's what you meant to do?
>
> A: I meant to put him on the ground, get the camera, take the film out.
>
> Q: Okay. When Mr. Hatmaker fell to the ground, had you let go at that point or were on him throughout?
>
> A: I held him.
>
> Q: Okay.
>
> A: I didn't just grab him and shove him, I mean, I didn't slam him, I grabbed him, held him, put him on the ground.

Id. at 32-33.

While Plaintiff was on the ground, Cox was "sitting on top of him. I'm straddling on my knees," restraining Plaintiff. Id. at 23, 24. Cox continued to restrain Plaintiff "a minute or two, long enough to take his camera, take the film out of it." Id. at 25.

Following the incident, on December 17, 1998, Plaintiff contacted the police and gave a sworn statement to the police that Cox had beaten him and kicked him. See Exhibit D. Cox was arrested and ultimately pled nolo contendere to the offense of misdemeanor battery and was adjudicated guilty. See Exhibit C (Cox deposition) at 34.

{M2033391;1}

6

Cox was placed on probation and ordered to participate in anger management seminars. Id. at 35.

### C. The Underlying Litigation

Following the incident, Plaintiff and his wife brought a civil lawsuit against Cox and Smith. A copy of the complaint is attached hereto as Exhibit E. In the underlying litigation, Plaintiff asserted five causes of action, all arising out of the altercation at issue, which he labeled as follows: (1) assault; (2) battery; (3) negligence; (4) consortium; and (5) aiding and abetting. See Exhibit E. After Liberty Mutual was advised as to the pendency of the lawsuit, it declined to provide coverage or a defense on the grounds that the intentional act exclusion barred coverage. See Deposition of Charles Penuel at 46-56 (attached hereto as Exhibit F). In the meantime, without Liberty Mutual's knowledge or participation, the parties reached an agreement to settle the underlying litigation, pursuant to which a judgment was entered against Cox, Cox assigned his rights under the Policy to Hatmaker, and Hatmaker agreed never to execute on the judgment against Cox. A copy of the settlement agreement is attached hereto as Exhibit G.

### D. The Instant Litigation

In the instant litigation, Plaintiff has asserted a claim for breach of contract arising under Cox's policy.[2] Pursuant to the assignment of Cox's rights under the Policy, Hatmaker is now suing for the Policy benefits, seeking coverage for the judgment that was entered

---

[2] Plaintiff initially also asserted a cause of action for bad faith. Upon Liberty Mutual's motion, the Court has abated that count until the resolution of the coverage issue in Count I.

{M2033391;1}

7

against Cox.[3] In addition, Plaintiff is also seeking damages for Liberty Mutual's allegedly improper denial of a defense for Cox in the underlying tort litigation, i.e., the sums that Cox paid to his own lawyer to represent him in the underlying litigation. This Court should enter final summary judgment in favor of Liberty Mutual because Liberty Mutual owed Cox no duty to indemnify or defend this claim.

## MEMORANDUM OF LAW

### I. LIBERTY MUTUAL OWES PLAINTIFF NO DUTY TO INDEMNIFY

#### A. Settlements Without an Insurer's Consent

With respect to the duty to indemnify, under Florida law, where a settlement is reached without an insurer's consent, and where the settlement calls for the insurance policy proceeds to be the only source of settlement funds (as in this case), two requirements must be satisfied in order for the settlement to be binding upon the insurer. First, the plaintiff must establish that coverage exists under the policy. See Steil v. Florida Physicians Ins. Reciprocal, 448 So. 2d 589, 592 (Fla. 2d DCA 1984). Second, the settlement may not be unreasonable in amount or tainted by bad faith. Id. The party seeking to enforce the settlement has the burden of establishing a prima facie showing of reasonableness and lack of bad faith. See id.; Shook v. Allstate Ins. Co., 498 So. 2d 498, 500 (Fla. 4th DCA 1986). Accordingly, for Plaintiff to prevail on his claim to entitlement to coverage for the policy proceeds, he must establish both that (1) the underlying claim

---

[3] Although the judgment is in the amount of $250,000, the Policy provides indemnity benefits in the amount of $100,000, and thus, that is the maximum amount recoverable by Plaintiff in this action for indemnity.

{M2033391;1}

8

was covered by the policy, and (2) the settlement agreement was reasonable.[4] As explained below, because the underlying claim is not covered under the policy, Plaintiff is not entitled to any proceeds of the policy, and Liberty Mutual is therefore entitled to summary judgment.

### B. Intentional Act Exclusion

Plaintiff is not entitled to indemnity benefits because the intentional act exclusion bars coverage. Under Florida law, the intentional act exclusion applies to exclude coverage as long as the insured either intended to cause injury, or acted in such a manner where injury would be expected to result from such actions. Cabezas v. Florida Farm Bureau Cas. Ins. Co., 830 So. 2d 156 (Fla. 3d DCA 2002); State Farm Fire & Cas. Co. v. Caldwell, 630 So. 2d 668 (Fla. 4th DCA 1994); Aetna Cas. & Sur. Co. v. Miller, 550 So. 2d 29 (Fla. 3d DCA 1989); State Auto. Mut. Ins. Co. v. Scroggins, 529 So. 2d 1194 (Fla. 5th DCA 1988). Where the injuries were intended or expected, coverage will be barred even if the insured did not intend or expect to injure the victim to the degree to which the victim was ultimately injured. Hartford Fire Ins. Co. v. Spreen, 343 So. 2d 649 (Fla. 3d DCA 1977). The mere fact that an insured testifies that he did not intend to injure the victim is not a bar to application of the exclusion. State Farm Fire & Cas. Co. v. Caldwell, 630 So. 2d 668 (Fla. 4th DCA 1994); Aetna Cas. & Sur. Co. v. Miller, 550 So. 2d 29 (Fla. 3d DCA 1989). This is because the clause excludes coverage for actions that

---

[4] At trial, Liberty Mutual will also establish that the amount of the settlement was not reasonable. However, Liberty Mutual does not move for summary judgment on this basis.

{M2033391;1}

can be expected to cause injury, even if the insured did not actually intend to injure the victim. Id.

In <u>Aetna Cas. & Sur. Co. v. Miller</u>, 550 So. 2d 29 (Fla. 3d DCA 1989), the insured was a doctor who had instructed a fellow staff member as to the proper method of speaking with a patient prior to surgery. A different doctor, who was unaware of the specific instructions, actually spoke with the patient and did not follow the instructions. When the insured doctor discovered what had occurred, he became upset, grabbed a stethoscope that was hanging from the neck of the second doctor, and pulled and twisted the stethoscope. As a result, the victim suffered injuries to her back. The insurer denied the claim based upon the intentional act exclusion. The trial court entered judgment in favor of the insured with respect to the insurance coverage issue. On appeal, the appellate court reversed, and entered judgment in favor of the insurer. Although the insured doctor testified that he "did not intend to cause the resulting physical injury," the Court found that the insured's intentional act of tugging the ends of the stethoscope while he was "mildly upset" triggered the intentional act exclusion. The fact that he did not intend to cause the resulting physical injury did not avoid the applicability of the exclusion. Id. at 30.

Similarly, in <u>State Auto. Mut. Ins. Co. v. Scroggins</u>, 529 So. 2d 1194 (Fla. 5th DCA 1988), the court barred a claim for insurance coverage based upon the intentional act exclusion. In that case, the insured and his friend met for a drink at a pool hall. The friend left the table, and upon his return, the insured pulled the chair out from the victim

{M2033391;1}

10

as the victim was sitting down, causing the victim to fall to the ground and suffer injuries. The victim then sued the insured, after which the insurer filed a declaratory relief action. The insurer argued that there was no coverage for the injuries due to the exclusion in the policy for actions which were "expected or intended." The trial court entered summary judgment in favor of the insured. On appeal, however, the appellate court reversed and ordered that summary judgment be entered in favor of the carrier.

The court found that the exclusion "is applicable to the intentional act of pulling a chair out from under a victim in order to see him fall. **The fact that an unintended serious injury resulted from the intended fall is irrelevant to the issue of coverage.**" Id. (emphasis added). Accordingly, irrespective of the fact that the insured may not have intended to injure the victim, such a lack of intent did not preclude application of the exclusion where the victim was injured as a result of the intentional act that could be expected to cause injury. See also Cabezas v. Florida Farm Bureau Cas. Ins. Co., 830 So. 2d 156 (Fla. 3d DCA 2002) (act of punching another individual in the face is barred by the intentional act exclusion as a matter of law, as such an act cannot be performed without an intent or expectation of injury); State Farm Fire & Cas. Co. v. Caldwell, 630 So. 2d 668 (Fla. 4th DCA 1994) (same – "If the injury is not intended, why attempt an act so calculated to injure?"); Hartford Fire Ins. Co. v. Spreen, 343 So. 2d 649 (Fla. 3d DCA 1977) (same).

In certain cases, courts have refused to apply the exclusion. The facts of such cases, however, are clearly distinguishable from the instant matter. See, e.g., Prudential

Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467 (Fla. 1993) (if insured only intended to scare the victim with a gun, rather than actually shoot the victim, then exclusion would not apply); Castro v. Allstate Ins. Co., 724 So. 2d 133 (Fla. 3d DCA 1998) (insured attempted to tickle victim's ear with radio antenna, and victim was injured when he quickly turned and antenna entered ear canal and ruptured ear drum; even though insured intended to touch victim, he did not intend to injure victim and it could not be said that injury from playful tickling was expected); Orear v. Allstate Ins. Co., 619 So. 2d 974 (Fla. 2d DCA 1993) (fact question as to whether insured and victim were both voluntarily engaging in "slam dancing").

Unlike Castro, Swindal and Orear, the insured in this case intentionally acted in a manner that would be expected to result in injury. See Miller, 550 So. 2d at 30; Scroggins, 529 So. 2d at 1195. Cox admits that he intended to crawl under a barbed wire fence to reach Plaintiff, that he intended to grab Cox, that he intended to throw Cox to the ground, and that he intended to restrain him. Cox does not assert that he was negligent, that he was acting in a playful manner, or that the incident was an accident. Much like twisting a stethoscope around the neck of another, punching another in the face, or pulling a chair out from under someone, Cox's intentional activities fall within the scope of the intentional act exclusion as a matter of law as they can be expected to result in injury. See Miller, 550 So. 2d at 30; Scroggins, 529 So. 2d at 1195. The fact that Cox testified that he did not intend to injure Plaintiff will not negate the exclusion. See Miller, 550 So. 2d at 30; State Farm Fire & Cas. Co. v. Caldwell, 630 So. 2d 668 (Fla. 4th

DCA 1994). As made clear in Florida case law, as long as Cox is engaged in intentional behavior which is expected to cause injury, the intentional act exclusion will bar coverage. In this case, where injury resulting from grabbing someone, throwing him to the ground and restraining him for minutes is clearly to be expected, Florida law is well established that summary judgment is appropriate.

## II. LIBERTY MUTUAL OWES NO DUTY TO DEFEND

Similarly, as with the duty to indemnify, Liberty Mutual owed no duty to defend its insured in the underlying litigation. Under Florida law, the duty to defend is governed by the allegations contained in the complaint and the provisions of the relevant policy. Fun Spree Vacations, Inc. v. Orion Ins. Co., 659 So. 2d 419 (Fla. 3d DCA 1995). An insurer must defend its insured only if the allegations in a complaint, **when fairly read**, allege facts which create potential coverage under the policy. See Cabezas v. Florida Farm Bureau Cas. Ins. Co., 830 So. 2d 156 (Fla. 3d DCA 2002); Fun Spree, 659 So. 2d at 421.

A plaintiff cannot impose a duty to defend an insured merely by labeling an intentional act as "negligence." See, e.g., Allstate Ins. Co. v. Bailey, 723 F. Supp. 665 (M.D. Fla. 1989) (plaintiff cannot convert sexual molestation into a negligent act merely by alleging that the acts were performed "carelessly and negligently"). Instead, the court must look to the substance of the allegations, not the label applied to it. See, e.g., Standard Fire Ins. Co. v. Proctor, 2003 WL 22348796 (D. Md. Oct. 7, 2003) ("the altercation at issue in the underlying suit falls squarely within the confines of intentional

{M2033391;1}
13

torts, and the addition of this negligence claim appears to be little more than an attempt to recharacterize intentional acts as negligent in order to ensure mutually beneficial coverage by Standard Fire's policy"); First Wyoming Bank, N.A. Jackson Hole v. Continental Ins. Co., 860 P.2d 1094 (Wyo. 1993) (breach of contract claim disguised as negligence claim); Freedman v. Cigna Ins. Co. of Texas, 976 S.W.2d 776 (Tex Ct. App. 1998) ("the label that the plaintiff puts on the cause of action is not controlling; it is the allegation of the facts which give that control").

In the underlying complaint, Plaintiff asserted five counts against Liberty Mutual's insured, John Harley Cox, which the complaint labeled as follows: (1) assault; (2) battery; (3) negligence; (4) consortium; and (5) aiding and abetting. See Exhibit E (underlying complaint). The only possible count that could trigger the duty to defend is the one labeled "negligence," Count III of the complaint.[5] Despite the label that Plaintiff applied to this count, Plaintiff cannot disguise an intentional act claim by denominating it as one for negligence. The actual allegations within the count establish that the claim is not one for negligence; instead, the specific allegations contained in Count III assert intentional acts. As a result, there is no duty to defend.

---

[5] The counts for assault, battery and aiding and abetting clearly allege intentional acts on the part of Cox, while the consortium claim is a derivative claim that would result in a defense only if at least one of the other counts would result in a defense. Therefore, only Count III, labeled as "negligence," potentially involves a duty to defend Plaintiff.

{M2033391;1}

14

The relevant portions of Count III of the underlying complaint state as follows:

16. Cox negligently **attempted to take** Mr. Hatmaker's camera from Mr. Hatmaker by accidental use of excessive force.

17. Cox should have known that he was using excessive force **to take the camera.**

See Exhibit E (underlying complaint) at Count III (emphasis added).

Notwithstanding that the Count is denominated one for "negligence," as pled, the Count clearly asserts that Cox engaged in intentional activity: he attempted to take the camera. It is this activity that Plaintiff alleges caused damages. The first definition of "take" in Webster's New World College Dictionary (3d ed.) is: "to get by conquering; capture; seize." Moreover, under Florida law, an individual commits a battery (an intentional tort and a criminal offense) when the perpetrator actually and intentionally touches another person against that person's will, including the touching or taking of an intimately connected object, such as cane or a purse (or a camera). See Nash v. State, 766 So. 2d 310 (Fla. 4th DCA 2000); Malczewski v. State, 444 So. 2d 1096 (Fla. 2d DCA 1984). Accordingly, it is clear that the purposeful "taking" of Hatmaker's camera (even if through the accidental use of excessive force) is an intentional act.

A plaintiff cannot transform an intentional act into one of "negligence" by placing the word "negligently" in the claim. See, e.g., Allstate Ins. Co. v. Bailey, 723 F. Supp. 665 (M.D. Fla. 1989); Aetna Cas. & Sur. Co. v. Miller, 550 So. 2d 29 (Fla. 3d DCA 1989) (no duty to defend where allegations of complaint "clearly establish an intentional act on the part of the insured within the policy's exclusion provisions, rendering

{M2033391;1}

15

irrelevant the allegations of negligence"). The allegations of Count III of the underlying complaint, when fairly read, establish that the claim is nothing more than an intentional tort hiding under a negligence label. Therefore, because the Policy does not provide coverage for intentional acts, Liberty Mutual owes no duty to defend. See Cabezas v. Florida Farm Bureau Cas. Ins. Co., 830 So. 2d 156 (Fla. 3d DCA 2002); Aetna Cas. & Sur. Co. v. Miller, 550 So. 2d 29 (Fla. 3d DCA 1989). Accordingly, Liberty Mutual is entitled to summary judgment with respect to the duty to defend.

## CONCLUSION

Based on the foregoing, Liberty Mutual respectfully requests that this Court grant summary judgment in favor of Liberty Mutual and against Plaintiff.

Respectfully submitted,

**AKERMAN SENTERFITT**
Attorneys for Defendant
One S.E. Third Ave, 28th Floor
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

By: _____
   MARK S. SHAPIRO
   Florida Bar No.: 894631
   e-mail: mshapiro@akerman.com
   GARY J. GUZZI
   Florida Bar No.: 159440
   e-mail: gguzzi@akerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served **via U.S. Mail** to: **BRANDON PETERS, ESQ.**, Morgan, Colling & Gilbert, P.A., 20 North Orange Ave., Suite 1600, Orlando, FL 32801 this 7th day of November, 2003.

_____
Attorney

{M2033391;1}

17

# ADDITIONAL ATTACHMENTS NOT SCANNED

EXHIBITS

## ** REFER TO COURT FILE **