

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROBERT P. HATMAKER,**

        **Plaintiff,**

-vs-                                 **Case No.:  6:02-cv-1437-Orl-22DAB**

**LIBERTY MUTUAL FIRE INSURANCE
COMPANY,**

        **Defendant.**

_____

# ORDER

## I. INTRODUCTION

This cause comes before the Court for consideration of: (1) the Defendant's Motion

to Dismiss Complaint with Prejudice for Fraud on the Court (Doc. No. 39), filed November

4, 2003, to which the Plaintiff responded (Doc. No. 53) on November 17,  2003; (2) the

Defendant's Motion for Summary Judgment (Doc. No. 45),  filed November 10, 2003, to

which the Plaintiff responded (Doc. No. 62) on December 8, 2003; and (3) the Plaintiff's

Motion for Summary Judgment (Doc. No. 47),  filed November 10, 2003, to which the

Defendant responded (Doc. No. 60) on December 8, 2003.

On December 30, 2003 United States Magistrate Judge David A. Baker issued a

Report and Recommendation (R&R) (Doc. No. 65). In his memorandum opinion, Judge

Baker recommends that the undersigned judge deny the Defendant's Motion to Dismiss

Complaint with Prejudice for Fraud on the Court (Doc. No. 39), and deny the Defendant's

Motion for Summary Judgment (Doc. No. 45). In addition, he recommends that the Court

deny the Plaintiff's Motion for Summary Judgment (Doc. No. 47). The Defendant filed

objections (Doc. No. 68 ) to Judge Baker's R&R on January 14, 2004.

Having reviewed the R&R (Doc. No. 65), the Defendant's objections thereto (Doc.

No.68), and all relevant papers in the record, this Court **DECLINES TO ADOPT** Judge

Baker's recommendations (Doc. No. 65), and **SUSTAINS** the Defendant's Objections (Doc.

No. 68) thereto.

## II. BACKGROUND[1]

On October 12, 1998, the Plaintiff, Robert P. Hatmaker (hereinafter, "Mr.

Hatmaker"), and his neighbor, John Harley Cox (hereinafter, "Mr. Cox"), were involved in a

physical altercation after Mr. Hatmaker took pictures of property located in Christmas,

Florida.[2] In a sworn statement filed with the Orange County Sheriff's Department, Mr.

Hatmaker described the incident as follows:

> I decided to go take some pictures [outside] . . . I heard
> some 3-wheelers coming . . . I saw Harley Cox in front
> on [a] 3 wheeler and Gary Smith in back. . . Harley
> Cox started hollering - who owns this property. . . I
> realized he was mad and there was no need to talk to
> him. I was sure he was going to hit me. . . I started
> running . . . They caught me and threw me into the
> ditch . . . into 8-10 inches of water and mud and
> jumped on me and started beating me on the side of my
> head. I could not see [] since my glasses had fell off.
> They had my head in the ditch in mud and water.

---

[1]To the extent they were uncontested, many of the facts set forth in this background section
were taken almost verbatim from the findings of facts set forth in Judge Baker's December 30, 2003
Report and Recommendation (Doc. No. 65).

[2]*See* Joint Pretrial Statement (Doc. No. 76), ¶5 at 6.

> Harley Cox was still beating on me and kicking me . . .
> I came to after they had knocked me [] out. When I
> came to they had ripped the camera out of my hands
> and taken the film out of the camera . . . I was wet and
> muddy, and my shirt was almost torn off.[3]

In view of Mr. Hatmaker's age (67),[4] Mr. Cox was arrested and prosecuted for felony

battery in violation of Fla. Stat. 784.08(2)(c).[5] Further, Mr. Hatmaker and his wife, Joan

Hatmaker (hereinafter, "Mrs. Hatmaker" or "wife") sued Mr. Cox in state court.[6] Their civil

complaint alleged assault (Count I), battery (Count II), negligence (Count III), and loss of

consortium (Count IV).[7]

---

[3]Defendant's Notice of Filing of Documents (Doc. No. 40), Ex. A at 1-3.

[4]*See id.* at 1.

[5]*See* Doc. No. 40, Ex. B. Fla. Stat. § 784.08(2)(c) reads as follows:

> Whenever a person is charged with committing an
> assault or aggravated assault or a battery or aggravated
> battery upon a person 65 years of age or older,
> regardless of whether he or she knows or has reason to
> know the age of the victim, the offense for which the
> person is charged shall be reclassified as follows:

> (c)   In the case of battery, from a
> misdemeanor of the first degree to a
> felony of the third degree.

[6]*See generally* Defendant's Second Notice of Filing Documents (Doc. No. 46), Ex. D.

[7]*See id.*, ¶¶7-36 at 2-6.

At the time of the fracas, Mr. Cox was insured under a homeowner's policy (hereinafter, "the policy") issued by Liberty Mutual Fire Insurance Company (hereinafter, "Liberty Mutual").[8] In relevant part, the policy reads:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> 1.    Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgement interest awarded against the "insured"; and
>
> 2.    Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.[9]

One of the exclusions to coverage is for intentional acts, *i.e.*, those acts which are "expected or intended by the 'insured.'" *Id.* Exclusions, ¶1(a). On the basis of this exclusion, Liberty Mutual refused to defend Cox in the civil lawsuit brought by the Hatmakers.[10]

Ultimately, Mr. Cox pled no contest (to a lesser included offense of battery) in the criminal prosecution.[11] As a result, he was fined and sentenced to: one day in jail, credit for

---

[8]*See* Doc. No. 76, ¶1 at 6.

[9]Policy at Section II, Liability Coverages, Coverage E- Personal Liability (Doc. No. 46, Ex. C at pg. 11).

[10]*See* Doc. No. 76, ¶7 at 6.

[11]*See* Doc. No. 40, Ex. C at 1.

time served; one year's supervised probation; a twelve (12) week anger management seminar; and payment of restitution to Plaintiff.[12] Likewise, Mr. Cox entered into a settlement agreement in the civil suit (hereinafter, "the underlying lawsuit").[13]

In the settlement agreement, the Hatmakers accepted a judgment against Mr. Cox in the amount of $250,000 on the negligence claim only.[14] All other claims against Mr. Cox were dismissed with prejudice.[15] The $250,000 figure was apportioned as follows: $10,000 for Mr. Hatmaker's past medical bills; $25,000 for Mr. Hatmaker's future medical bills; $115,000 for Mr. Hatmaker's pain and suffering; and $100,000 for Mr. Hatmaker's wife's loss of consortium.[16] Mr. Cox also agreed to assign all of his rights against Liberty Mutual to Mr. Hatmaker.[17] In exchange, Mr. Hatmaker and his wife agreed not to execute on the judgment against Mr. Cox, but instead to seek recovery only from Liberty Mutual.[18] The parties further agreed that the judgment would be discharged once this litigation was finished, irrespective of whether Mr. Hatmaker was successful in this litigation.[19]

---

[12]*See id.*

[13]*See generally* Doc. No. 40, Ex. G.

[14]*See* Doc. No. 76, ¶8 at 6.

[15]*See id.*

[16]*See id.*

[17]*See id.*

[18]*See id.*

[19]*See id.*

Against that backdrop, Mr. Hatmaker filed the present lawsuit against Liberty Mutual seeking coverage for funds associated with the duty to defend Mr. Cox in the underlying lawsuit and funds associated with the duty to indemnify Mr. Cox (or, in this case, his assignee, Mr. Hatmaker) for the agreed judgment.[20] In the instant action, however, Mr. Hatmaker's memory of the events giving rise to this litigation has deteriorated significantly.[21] Specifically, he has gone from stating that Mr. Cox "absolutely beat the hell out of [him]" to not remembering even being touched by Mr. Cox.[22] Liberty Mutual contends that such forgetfulness evidences a manipulation of the facts to avoid the intentional-acts exclusion in Mr. Cox's insurance policy.[23]

Turning to the issue at hand, Liberty Mutual now urges this Court to dismiss this action for fraud upon the court.[24] Further, the parties have filed cross-motions for summary judgment.[25] Liberty Mutual seeks summary judgment on the ground that it had no duty to defend or indemnify Mr. Cox (or, in this case, his assignee, Mr. Hatmaker) in light of its

---

[20]*See generally* Complaint (Doc. No. 2).

[21]Compare June 21, 1999 Deposition of Robert P. Hatmaker (Doc. No. 39), Ex. B to September 24, 2003 Deposition of Robert P. Hatmaker (Doc. No. 44).

[22]Compare June 21, 1999 Deposition of Robert P. Hatmaker (Doc. No. 39), Ex. B at pg. 34, lines 14-15 to September 24, 2003 Deposition of Robert P. Hatmaker (Doc. No. 44) at pg. 48, lines 3-8.

[23]*See generally* Doc. No. 39.

[24]*See id.*

[25]*See generally* Docs. No. 45 and 47.

intentional-acts exclusion.[26] Mr. Hatmaker seeks summary judgment on the ground that Liberty Mutual had a contractual obligation to defend Mr. Cox in the underlying lawsuit, and further, that all of Liberty Mutual's affirmative coverage defenses are time-barred.[27]

In his R&R, Judge Baker recommends that this Court deny the Defendant's Motion to Dismiss Complaint With Prejudice for Fraud on the Court.[28] Further, he recommends that both parties' motions for summary judgment be denied inasmuch as genuine issues of material fact remain.[29] Liberty Mutual now objects to these recommendations.[30]

### III. ASSIGNMENTS OF ERROR

In its Objections (Doc. No. 68) to Judge Baker's recommendations, Liberty Mutual assigns four points of error: (1) that the magistrate judge erred in failing to consider Liberty Mutual's duty to defend Mr. Cox in the underlying lawsuit; (2) that had Judge Baker considered the issue, he would have recommended that Liberty Mutual had no duty to defend Mr. Cox, and therefore, has no duty to indemnify Mr. Cox (or, in this case, his assignee, Mr. Hatmaker); (3) that in any event, the magistrate judge erred in recommending that an issue of fact remains with respect to Liberty Mutual's duty to indemnify Mr. Cox (or, in this case, his assignee, Mr. Hatmaker); and (4) that Judge Baker erred in failing to

---

[26]*See generally* Doc. No. 45.

[27]*See generally* Doc. No. 47.

[28]*See generally* Doc. No. 65.

[29]*See id.*

[30]*See generally* Doc. No. 68.

recommend that Mr. Hatmaker perpetrated fraud upon the court in prosecution this action. *See* Doc. No. 68 at 1-2.

## IV. STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation, the district judge must make a *de novo* determination of the findings and/or recommendations to which any party objects. *See* 28 U.S.C. § 636(b)(1)(C) (2003). "This requires that the district judge 'give fresh consideration to those issues to which specific objection has been made by a party.'" *Lacy v. Apfel*, 2000 U.S. Dist. Lexis 21437, \*2-3 (M.D. Fla. Oct. 20, 2000) (quoting *Jeffrey S. v. State Bd. of Educ.*, 896 F. 2d 507, 512 (11th Cir. 1990)). "In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo*." *Lacy*, 2000 U.S. Dist. Lexis 21437 at \*3 (emphasis added) (internal citation omitted). However, regardless of whether objections are filed, a district judge must review a magistrate's legal conclusions *de novo*. *See id.* After reviewing a report and recommendation, objections, and responses thereto, the district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* § 636(b)(1)(C).

## V. LEGAL ANALYSIS

### A. THE DUTY TO INDEMNIFY

This Court will first consider Liberty Mutual's duty to indemnify. On that point, Liberty Mutual argues that since the record indicates "nothing negligent or accidental about Cox's admitted actions[,]" Doc. No. 68 at 8, the magistrate judge erred in recommending

that a genuine issue of material fact exists in that regard, *see id.* at 6-9. In other words,

Liberty Mutual argues that Judge Baker should have recommended, as a matter of law, that

the actions complained of here are excludable from coverage. See *id.* at 6-9.

"The duty to indemnify is separate and distinct from the duty to defend." *Northland*

*Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (internal citations

omitted). Unlike the duty to defend, which is measured by the facts and claims as alleged in

the complaint, the duty to indemnify is measured by the facts as they unfold at trial or are

inherent in a settlement agreement. *See id.*

With these principles in mind, this Court considers Mr. Hatmaker's testimony.

In a sworn statement submitted to the Orange County Sheriff's Department, Mr.

Hatmaker attested that Mr. Cox jumped on top of him and started beating him on the side of

his head. *See* Doc. No. 40, Ex. A at 3 ("Harley Cox was . . . beating on me and kicking me").

Subsequently, as part of the discovery in the criminal case against Mr. Cox, the Plaintiff

testified:

> Q.    What did they do to you?
>
> A.    Beat the hell out of me.
>
> Q.    . . . Do you know what Harley did, sir . . . [?]
>
> A.    Listen, when someone is sitting on the top of you and you're
>       standing there trying to keep them from beating your head in,
>       you're laying in water flat on your face and they're beating the
>       hell out of me - - that's what they did.
>
>                               ***
>
> Q.    . . . Do you know whether or not Harley Cox ever hit you?

A.     Harley? Yes. Harley Cox beat the hell - -

June 21, 1999 Deposition of Robert P. Hatmaker (Doc. No. 39), Ex. B at pg. 28, line 14

through pg. 29, line 10.

Mr. Hatmaker continued:

Q.     Did they beat the hell out of you?

A.     I mean absolutely beat the hell out of me.

Q.     Mr. Hatmaker - -

A.     I'm not exaggerating.

Q.     - - did they hit you in the face?

A.     Hit me in the face.

Q.     Several times?

A.     Bunch of times. All over. My eyes blacked.

Q.     Your eyes were black?

A.     The back, the top of my head - -

Q.     Was bleeding?

A.     Bleeding . . .

*Id.* at pg. 34, lines 14-25.

Again on June 13, 2001, in connection with the civil lawsuit brought by the

Hatmakers against Mr. Cox and Gary Smith, Plaintiff testified:

Q.     . . . Did they catch you?

A.     Yes . . . Only thing I remember, Cox is on top of me beating
the hell out of me when I come to.

-10-

\*\*\*

Q.    . . . Do you know which one knocked you down?

A.    I'm sure it was Harley Cox.

Q.    Okay. And then was Mr. Cox punching you on the ground?

A.    Yeah.

Q.    Was Mr. Smith?

A.    Knocked me out. I guess when I come to, Cox is on top of me, beating the hell out of me . . .

June 13, 2001 Deposition of Robert P. Hatmaker (Doc. No. 39),  Ex. E at pg. 31, line 16, through pg. 33, line 24.

Although Mr. Hatmaker has experienced a failure of memory, his most recent testimony does not contradict his earlier characterizations of this altercation:

Q.    Do you remember being thrown to the ground?

A.    I don't think that I was throwed [sic] to the ground. I think I was - - from behind I'm not sure what happened, but I - - I don't see how you could word it throwed [sic] to the ground when you're running as fast as you can go.

See September 24, 2003 Deposition of Robert P. Hatmaker (Doc. No. 44)  pg. 39, line 25 through pg. 40, line 5.

Mr. Hatmaker continued:

Q.    Do you recall being struck or punched?

A.    Huh?

Q.    Do you recall being struck or punched?

-11-

A.     Struck?

Q.     Uh-huh.

A.     No.

Q.     What about punched?

A.     No. I don't know what happened. I don't know what happened . . .

Q.     At no time have you ever known what happened, is that your position today?

\*\*\*

A.     No, all I know is that Gary Smith and Harley Cox was back there, and I don't - - I still don't know where because, like I said, I couldn't see, didn't have my glasses. I couldn't even - - I couldn't find my way hardly back. I didn't have glasses when I got back to the house.

Q.     Did you ever tell the State Attorney's Office that Mr. Cox beat the hell out of you?

A.     Oh, I'm sure I said that they beat me up, you know.

Q.     In fact, you said that under oath, didn't you?

A.     Yeah, probably.

Q.     Well, did they beat you up?

A.     I'm not sure what they did. But I didn't see - - I'm just telling you what I think that they done, that's it, you know. I'm just assuming.

Q.     So you told the State Attorney's Office that they beat you up without knowing that they hit you?

A.     Well, I'm sure they hit me, I'm sure they hit me, but I - - I - - I don't - - I probably told them that they beat me up, you know, but I didn't see them beat me up.

*Id.*, at pg. 40, line 10 through pg. 42, line 13.

*Id.*, at pg. 40, line 10 through pg. 42, line 13.

He further stated:

> Q.    You don't remember being touched by Mr. Cox? . . .
>
> A.    I don't remember being touched by nobody, you know.
>
> Q.    You don't remember being thrown to the ground, correct?. . .
>
> A.    I told you that I don't know how may times, I don't. That's all I know is when I was running I know where I was going to, but that's it, that's it. And all at once everything is just - -

*Id.* at 48, lines 3-17.

Viewing this testimony, and all inferences drawn therefrom, in the light most favorable to the Plaintiff, the Court finds that the Mr. Hatmaker is incapable of providing evidence sufficient for a reasonable jury to return a verdict in its favor. Manifestly, Mr. Hatmaker's testimony reflects the clear absence of a genuine issue of material fact; the acts complained of here unequivocally fall within the insurance policy's exclusion of acts expected or intended by the insured. Mr. Cox's deposition testimony confirms this:

> Q.    . . . [W]hen you reached him [Mr. Hatmaker], you took with your right arm and you grabbed him, right?
>
> A.    I reached to get him by the arm, he slung his arm up.
>
> Q.    Which arm, do you know which arm you grabbed him, the arm with the camera?
>
> A.    I don't remember. He sling his arm up, when he did, *I grabbed him* by the arm, *throwed him on the ground* and took the camera away from him.
>
> Q.    Okay. And when you say you threw him on the ground, tell me - - I mean, how did you do it, did you push and fall or how?

A.    *I grabbed him, pushed him down on the ground*, I mean, it wasn't a wrestler over the head body slam, you know. *It was just grab him and put him on the ground*. We did not go over to hurt the man . . .

September 24, 2003 Deposition of John Harley Cox (Doc. No. 46), Ex. A pg. 20, line 16

through pg. 21, line 6 (emphasis added).

He continued:

Q.    Let me just go back to one thing, Mr. Cox. When you said you intended to throw Mr. Hatmaker on the ground, to put it a different way, it wasn't an accident that Mr. Hatmaker fell on the ground, was it?

A.    No, I put him on the ground.

Q.    Okay. That's what you meant to do?

A.    I meant to put him on the ground, get the camera, take the film out.

Q.    Okay. When Mr. Hatmaker fell to the ground, had you let go at that point or were [you] on him throughout?

A.    I held him.

Q.    Okay.

A.    I didn't just grab him and shove him, I mean, I didn't slam him, I grabbed him, held him, put him on the ground.

*Id.* at pg. 32, line 22 through pg. 33, line 11.

That Mr. Cox "did not intend to cause the resulting physical injury does not avoid the

policy's intentional act exclusion." *Aetna Cas. & Sur. Co., Inc. v. Miller*, 550 So. 2d 29, 30

(Fla. 3rd DCA 1989) (internal citation omitted); *State Auto Mut. Ins. Co. v. Scroggins*, 529

So. 2d 1194, 1195 (Fla. 5th DCA 1988) ("The fact that an unintended serious injury resulted

from the intended fall is irrelevant to the issue of coverage") (internal citation omitted).

In light of the foregoing, this Court respectfully declines to adopt Judge Baker's R&R. While the learned judge's memorandum opinion is lengthy and comprehensive, this Court is more persuaded by the legal authorities holding as a matter of law that "[a] punch to the head by an insured is an act expected or intended by the insured to cause bodily injury." *Cabezas v. Fla. Farm Bureau Cas. Ins. Co.*, 830 So. 2d 156, 157 (Fla. 3rd DCA 2002) (concluding that a punch to the head by an insured is an expected or intentional act, and therefore excludable from coverage) (internal citation omitted); *see also Miller*, 550 So. 2d at 30 (concluding that a doctor's grabbing and twisting of a stethoscope around an individual's neck was an expected or intentional act, and therefore excludable from coverage); *Scroggins*, 529 So. 2d at 1195 (concluding that pulling a chair out from under another person constitutes an expected or intentional act excludable from coverage).

## B. THE DUTY TO DEFEND

This Court will next consider Liberty Mutual's duty to defend Mr. Cox in the underlying litigation.

In Florida, it is well established that an insurer's duty to defend "must be measured by the allegations of the complaint." *Barry Univ., Inc. v. Fireman's Fund Ins. Co.*, 845 So. 2d 276, 278 (Fla. 3rd DCA 2003) (internal citation omitted). Thus, "[i]f the complaint, fairly read, alleges facts which create potential coverage under the policy, [then] the insurer must defend the lawsuit." *Id.* (internal citations omitted).

Notwithstanding this liberal standard, a plaintiff cannot trigger a duty to defend merely by labeling an intentional act "negligent." Instead, as the decisions rendered in *Aetna*

*Cas. & Sur. Co. v. Miller*, 550 So. 2d 29 (Fla. 3d DCA 1989) and *Cabezas v. Fla. Farm Bureau Cas. Ins. Co.*, 830 So. 2d 156 (Fla. 3rd DCA 2002) make clear, where the alleged facts establish intentional conduct, but the claim alleges negligence, the negligence label should be disregarded. While a wolf in sheep's clothing presents a clever disguise it is still a wolf.

In *Miller*, a doctor (hereinafter, "the first doctor") became upset at another doctor (hereinafter, "the second doctor"), and pulled and twisted the stethoscope around her neck. *See id.* at 30. As a result, the second doctor suffered injuries to her back, and filed suit against the first doctor claiming assault and battery, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. *See id.* at 29-30.

In response to the second doctor's lawsuit, the first doctor filed a third-party complaint for declaratory relief against his insurer. *See id.* at 30. Notwithstanding an intentional acts exclusion, the trial court ruled in favor of the first doctor. *See id.*

On appeal, the Third District Court of Appeal reversed. *See id.* Acknowledging the general rule that the allegations in a complaint govern the duty to defend, the appellate court stated:

> Here, the facts, as stated in the pleadings, and as presented at trial, clearly establish an intentional act on the part of the insured within the policy's exclusion provisions, rendering *irrelevant* the allegations of negligence . . .[Accordingly], the declaratory judgment finding [the insurance company] to have a duty to defend and to provide coverage is reversed for entry of judgment in favor of the [insurance company].

*Id.* (internal citation omitted) (emphasis added).

In *Cabezas*, the appellate court reached a similar conclusion. There, the insured (hereinafter, "Helms") was involved in a car accident while driving his parents' car. *See id.* at 157. Following the impact, however, the other party (hereinafter, "the injured party") involved in the collision continued driving. *See id.* Fearing that the injured party was fleeing the scene of an accident, Helms pursued the injured party for several blocks, forcing his vehicle to the side of the road. *See id.*

With both vehicles safely stopped, Helms exited his automobile, and proceeded to the place of impact: the front of the car. *See id.* While surveying the damage, however, Helms became distracted by someone behind him. *See id.* When Helms turned around, he saw hands in the air. *See id.* Believing that he was going to get hit, Helms punched the injured party on the side of the head causing permanent and incapacitating injuries. *See id.*

As a result of the altercation, the injured party filed suit against Helms and his parents alleging false arrest and imprisonment, negligence, vicarious liability, and loss of consortium. *See id.* In response, Helm's insurance company sought a declaration that Helm's actions did not fall within the coverage of the insurance policy. *See id.* The trial court concluded that Helm's acts constituted an intentional tort and therefore did not fall within the coverage of the insurance policy. *See id.*

On appeal, the Third District Court of Appeal affirmed. *See id.* at 158. Acknowledging that an insurer has a duty to defend when the allegations in a complaint, fairly read, allege facts which create the potential for coverage, the appellate court stated:

> Taking the[] facts at face value, there is no dispute that Helms
> either intentionally struck [the injured party] []"albeit without
> the intent to harm"[], or intentionally struck [the injured party]
> based upon an erroneous belief that he was an assailant. In
> either case, the intentional act falls within the exclusion of the
> homeowners policy.

*Id.*

As in *Miller* and *Cabezas*, the facts presented in this matter establish intentional

conduct on the part of the insured. Nonetheless, as in *Miller* and *Cabezas*, the Plaintiff here

alleges negligence:

> 15.   On or about October 12, 1998, Mr. Hatmaker was taking photographs with a
>       hand-held camera.
>
> 16.   Cox negligently attempted to take Mr. Hatmaker's camera from Mr.
>       Hatmaker by accidental use of excessive force.
>
> 17.   Cox should have known that he was using excessive force to take the camera.

Doc. No. 46, Ex. D, ¶¶15-17 at 3.

Following *Miller* and *Cabezas*, this Court disregards the Plaintiff's "negligence"

label. A careful reading of the allegations in that Count do not reflect negligence but rather

battery: the actual and intentional touching of another person or an *object* intimately

connected to that person against that person's will. *See Nash v. Florida*, 766 So. 2d 310 (Fla.

4th DCA 2000); *see also Malczewski v. State*, 444 So. 2d 1096, 1099 (Fla. 2d DCA 1984).

The Plaintiff's argument to the contrary - that an individual can negligently "take" an

object from another individual - is preposterous. The word "take" insinuates intentional

conduct; a taker takes with the intent to take. *See* Black's Law Dictionary 1466 (7th ed.

1999) (defining take as: "1. To obtain possession or control, whether legally or illegally . . . 2. To seize with authority; to confiscate or apprehend").[31]

## VI. CONCLUSION

Having conducted a *de novo* review of the facts and law presented in this matter it is **ORDERED** that:

1.      The Court **DECLINES TO ADOPT** the December 30, 2003 Report and Recommendation (Doc. No. 65).

2.      The Defendant's, Liberty Mutual Fire Insurance Company, January 14, 2004 Objections (Doc. No. 68) to the Report and Recommendation (Doc. 65) are **SUSTAINED**.

(a)      To the extent Liberty Mutual Fire Insurance Company raised objections to the magistrate judge's failure to consider its duty to defend Harley Cox in the underlying litigation, its Objections (Doc. No. 68) are **SUSTAINED**. This Court determines that Liberty Mutual Fire Insurance Company had no duty to defend Mr. Cox in the underlying litigation.

(b)      To the extent Liberty Mutual Fire Insurance Company raised objections to the magistrate judge's ruling on its duty to indemnify Harley Cox for the settlement amount, its Objections (Doc. No. 68) are **SUSTAINED**. This

------

[31]Inasmuch as this Court has disposed of this matter on summary judgment, it need not consider Liberty Mutual's objections to Judge Baker's recommendation denying the Defendant's Motion to Dismiss Complaint with Prejudice for Fraud on the Court (Doc. No. 39). Nevertheless, the Court cautions the Plaintiff and his counsel that it finds the allegation of negligence incredulous and perilously close to violating the parameters of Rule 11 of the Federal Rules of Civil Procedure. At the very least, that claim is predicated on an appreciable stretch of the truth.

Court rules that Liberty Mutual Fire Insurance Company has no duty to indemnify Harley Cox (or, in this case, his assignee, Mr. Hatmaker) for the settlement amount.

3.      The Defendant's, Liberty Mutual Fire Insurance Company, November 10, 2003 Motion for Summary Judgment (Doc. No. 45) is **GRANTED**.

   (a)     To the extent Liberty Mutual Fire Insurance Company seeks summary judgment on its duty to defend, the Motion for Summary Judgment (Doc. No. 45) is **GRANTED**. This Court determines that Liberty Mutual Fire Insurance Company had no duty to defend Harley Cox in the underlying litigation.

   (b)     To the extent Liberty Mutual Fire Insurance Company seeks summary judgment on its duty to indemnify, the Motion for Summary Judgment (Doc. No. 45) is **GRANTED**. This Court rules that Liberty Mutual Fire Insurance Company has no duty to indemnify Harley Cox (or, in this case, his assignee, Mr. Hatmaker) for the settlement reached in the underlying litigation.

5.      The Clerk shall enter a final judgment providing that the Plaintiff, Robert P. Hatmaker, shall take nothing on his claims against the Defendant, Liberty Mutual Fire Insurance Company. The judgment shall further provide that the Defendant, Liberty Mutual Fire Insurance Company, shall recover its costs arising from Robert P. Hatmaker's claims.

6.      The Clerk shall **REMOVE** this case from the March 2004 trial calendar.

7.      All other pending motions are **DENIED AS MOOT**.

8.      The clerk is directed to **CLOSE THE FILE**.

9.      This Court reserves jurisdiction to consider Liberty Mutual's entitlement, if any, to attorneys' fees.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida this _____ day of February, 2004.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
Administrative Law Clerk
United States Magistrate Judge David A. Baker

F I L E   C O P Y

Date Printed: 02/17/2004


Notice sent to:

      ___    Brandon Scott Peters, Esq.
            Morgan, Colling & Gilbert, P.A.
            20 N. Orange Ave., 10th Floor
            P.O. Box 4979
            Orlando, FL  32802-4979

            6:02-cv-01437    rdo

      ___    Mark S. Shapiro, Esq.
            Akerman Senterfitt
            One S.E. Third Ave., 28th Floor
            Miami, FL  33131-1714

            6:02-cv-01437    rdo

      ___    Gary J. Guzzi, Esq.
            Akerman Senterfitt
             One S.E. Third Ave., 28th Floor
            Miami, FL  33131-1714

            6:02-cv-01437    rdo